GEORGE W. SUNDERLIN *vs.* ALLEN W. TERRY.

Third Judicial District, Bridgeport, October Term, 1921.
WHEELER, C. J., BEACH, GAGER, CASE and CURTIS, Js.

The actual value of the interest of the defendant in the property at the time of its attachment, measures the limit of the surety's liability upon a bond following the statutory form (§ 5888) which is given to dissolve the attachment.

A sale and transfer of personal property to a corporation in payment for its capital stock issued to the vendor, divests his title and interest in the property so transferred, as effectually as a completed sale for any other purpose.

In the present case one T incorporated a general contracting business which he had theretofore carried on in his own name, and transferred to the corporation so formed all the horses, trucks, scrapers and other equipment used by him in that business, worth $10,000 or more, and received from the corporation substantially all of its capital stock amounting to $10,000. The bill of sale to the corporation provided that the assets so transferred to it should be "subject to whatever liabilities there are outstanding against the said business." *Held* that the utmost that could be claimed from this clause was that the corporation, in taking the property, assumed, as part consideration, to pay whatever debts of the business might then be in existence; that this constituted no more than a personal obligation of the corporation, and gave T no right of ownership of any sort in the property which could be made the basis of an attachment against him.

The plaintiff, who had a claim of $150 against T, for which he attempted to attach the trucks, claimed that T's transfer to the corporation was fraudulent as against him and the trial court so found. *Held* that the trial court erred in refusing to correct the finding by eliminating fraud, as requested, inasmuch as the evidence certified clearly failed to justify any such conclusion.

The father of T had loaned him the money with which to go into business, and after the formation of the corporation T pledged his stock to his father to secure repayment of the latter's loan. *Held* that any equity in the stock belonged to T and might have been reached by attachment.

To convert a personal business into a corporate enterprise is altogether too common to raise any presumption of fraud.

The omission to do something that is not requisite to lawfully organize a corporation and to make a valid transfer of property to it, cannot be imputed to the organizers or to the company as fraud.

It appeared that three or four years after the creation of the corporation, T did some work in Baltimore in his own name, in which he used some of the property here in question. *Held* that this was a matter between T and the corporation, and immaterial as tending to render fraudulent a sale to the corporation validly effected in 1916.

Argued November 4th, 1920—decided February 21st, 1921.

ACTION against the surety on an attachment bond, by a judgment creditor of the principal named therein, to recover the amount of his judgment, brought to and tried by the Court of Common Pleas in Fairfield County, *Walsh, J.;* facts found and judgment rendered for the plaintiff for $384, and appeal by the defendant. *Error, judgment set aside and cause remanded.*

On November 13th, 1916, O. F. Terry, who for some time had been in the general contracting business, caused O. F. Terry, Inc., to be incorporated to take over and to carry on his business. On November 14th, 1916, the company was organized with a capital paid in of $10,000. The stock was subscribed for by O. F. Terry, 98 shares, the defendant, A. W. Terry, 1 share, and E. K. Nicholson, 1 share. At that time O. F. Terry owned horses, trucks, scrapers and other property used in the contracting business, of the value of upward of $10,000, and by a formal bill of sale sold and delivered this property to the company in payment in full of the capital stock of $10,000. Full paid stock was immediately issued to the subscribers. The defendant, A. W. Terry, was father of O. F. Terry, and had loaned O. F. Terry money with which to buy his contracting plant, and immediately upon the receipt of his 98 shares of stock from the company, O. F. Terry transferred it to the defendant, A. W. Terry, as collateral security for money owed for the purchase of the plant which had been sold to the company. The amount of this debt did not appear. Prior to the organization of the corporation, O. F. Terry had rented a hoisting machine of the plaintiff, for the use of

which he owed the plaintiff, on November 14th, 1916, about $150. In February, 1917, the plaintiff brought an action against O. F. Terry for rent then claimed to be due, in which the plaintiff recovered judgment in September, 1917, for $294.45 and costs. In this action the plaintiff attached, as the property of O. F. Terry, six trucks, which were part of the property sold to the corporation the preceding November in payment for the capital stock, and also a savings-bank deposit of $81. On March 20th, 1917, to procure the release of the attachment upon the trucks, the defendant, with O. F. Terry, entered into a bond in the form prescribed by the statute, § 5888. After the judgment rendered on September 21st, 1917, execution was issued, and the officer made demand upon O. F. Terry and defendant for payment, which was refused. This action was brought against A. W. Terry upon this bond. The answer was that on the day the attachment was made, February 21st, 1917, the original defendant, O. F. Terry, had no interest in the attached property except as to a small amount of cash as to which no question was raised. The court held the contrary, and rendered judgment for the plaintiff to recover the full amount of the bond. Other necessary facts are stated in the opinion.

*William J. Buckley*, for the appellant (defendant).

*Frank L. Wilder*, for the appellee (plaintiff).

GAGER, J. The condition of the bond in suit follows the form of the statute (§ 5888), and, after the preliminaries. reads: "Now, Therefore, if the said Orange F. Terry shall pay any judgment that may be recovered against him in such action, not exceeding the sum of Four Hundred ($400.00) Dollars, (the amount of damages demanded by said writ) or in default of such payment shall

pay to the officer having the execution issued on such judgment, on demand, the actual value of the interest of the said Orange F. Terry in said attached property at the time of said attachment, not exceeding the amount of Four Hundred ($400.00) Dollars, then this bond shall be void, but otherwise in full force and effect."

Under this bond the limit of the surety's liability is the actual value of the defendant's interest in the property released at the time of the attachment. Defendant's interest in the cash attached was admitted. But the defendant's interest in the six trucks attached is denied. Whether or not the defendant, O. F. Terry, had, at the date of the attachment, February 21st, 1917, an attachable interest in the trucks, is the question to be determined.

The defendant claims that by the bill of sale of the property in November, 1916, to the O. F. Terry, Inc., for $10,000 in payment for the capital stock, O. F. Terry effectually parted with his title, his ownership in the property ceased, and his interest became transformed into that of a stockholder, and could only be reached through attachment of his capital stock. It must be admitted that this would be the ordinary effect of a sale of personal property to a corporation under these circumstances, and that a transfer for the purpose of paying for capital stock of the transferror, divests his title and interest in the property transferred as effectually as in the case of a completed sale for any other purpose.

But the plaintiff, admitting as he must, that if the transaction is one by which the entire title in the personal property passed to the corporation, as stated above, O. F. Terry's interest could only be reached by way of his interest as a stockholder, and not through his title in the property transferred, yet claimed that O. F. Terry retained, and on February 21st had, an attachable interest in the property for two reasons: first, as reserved

in the bill of sale; and second, because the transfer to the corporation was fraudulent.

As to plaintiff's first claim, it appears that the bill of sale by which the transfer to the corporation was effected, after enumerating specific articles transferred, goes on: "and all other assets now used in or connected with the business conducted by me under the name of O. F. Terry, subject to whatever liabilities there are outstanding against the said business." The plaintiff claims that this clause in the bill of sale somehow operated to leave in O. F. Terry an attachable interest in the property sold, because, at the time of the sale, Terry was owing the plaintiff a debt arising from his business. The bill of sale was a transfer of the entire ownership of the property to the company. The clause in question did not purport to constitute and could not operate as constituting, any reservation of right, title or interest. Without attempting to decide the technical relationship in which the company stood to the property and to O. F. Terry, the most that can possibly be claimed is that the company, in taking the property, assumed as part consideration to pay whatever outstanding debts of the business might be in existence at the time of the transfer. This constituted no more than a personal obligation of the company, and gave Terry no right of ownership of any sort in this property which could furnish the basis of an attachment on the property as against him. Where, before the transfer, he owned the actual property described, after the transfer he became the owner of shares of stock. His property relation to the specific articles was at an end.

As to the plaintiff's second claim, it appears that the court, in its memorandum, apparently rested its decision on the special clause in the bill of sale, but when it came to make up the finding, raised the further claim that the transfer to the company was fraudulent, and

therefore the property could still be attached as O. F. Terry's. In its finding the court says: "The transfer from said Orange F. Terry to said Orange F. Terry, Inc., was not a bona fide one and was made for the purpose of preventing the plaintiff from being able to secure his claim." On two occasions the court also referred to the bill of sale as an "attempted" assignment. The refusal of the court to correct the finding by omitting so much as finds fraud, is made a ground of appeal, and the entire evidence was certified to this court. A careful examination of the evidence and the subordinate facts of the finding, has convinced us that the court was in error in not making this correction and removing the finding of fraud from the case.

The organization of the corporation was, as appears by the records, completed on November 14th, 1916, and was entirely regular. If at that time the transfer was valid, it thereafter remained valid. The subordinate facts found by the court, and the evidence, are quite inconsistent with the finding of fraud. The only debts of O. F. Terry shown to have been existing at the time, were a debt of $150 to $160 to the plaintiff, and a debt of a considerable amount, how much does not appear, to Allen W. Terry, incurred in the purchase of the same contracting plant sold to the corporation. The bill of sale itself, in the clause above referred to, displays an evident anxiety to provide for the payment of any debts against the business. The property was sold for full value in the way and for a purpose provided in the corporation law. The capital stock received in payment was pledged to A. W. Terry as security for his claim. Any equity in the stock remained and was reachable by attachment. It nowhere appears that O. F. Terry did not have other property to respond to his debts. It appears that he did have $81 in the savings-bank.

To organize a personal business into a corporation is

Sunderlin *v*. Terry.

altogether too common to raise any presumption of fraud. Moreover, as an ordinary business proposition, it seems improbable that one having $10,000 of property should transfer the whole to escape the payment of the small sum of $150 to $160 and retain in the bank half enough cash to pay even that, so that $80 was the limit of the claimed motive for the fraudulent transfer.

It is also to be noticed that the plaintiff's action in which the attachment was made, was not brought until three months after the corporation was organized, and that this action was for use of plaintiff's engine by O. F. Terry down to the date of the action.

The finding states that no notice was ever given the plaintiff of the attempt to transfer this property to the company. Whatever was necessary to be done to make the transfer and lawfully organize the corporation, was done. Neither Terry nor the company are chargeable with fraud for not doing more.

It is also found that O. F. Terry in his own name did some business after the company was organized, and that at the time of the trial he was in business in Baltimore using some of this property in its conduct. This is a matter between Terry and the company, and is immaterial as tending to render fraudulent a sale validly effected in 1916.

The court was in error in finding and holding that O. F. Terry had an attachable interest in the property covered by the bill of sale to the company; the judgment is set aside and the cause remanded with directions to enter judgment for the plaintiff for $81.87, the amount attached in the savings-bank.

In this opinion the other judges concurred.